**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>INTROCAN, INC.,<br><br>Debtor. | Case No. 13-11499 (BLS)<br><br>Chapter 7 |
| In re:<br><br>FENWICK AUTOMOTIVE PRODUCTS LIMITED,<br><br>Debtor. | Case No. 13-11500 (BLS)<br><br>Chapter 7 |
| In re:<br><br>FLO-PRO INC.,<br><br>Debtor. | Case No. 13-11501 (BLS)<br><br>Chapter 7 |
| In re:<br><br>LH DISTRIBUTION INC.,<br><br>Debtor. | Case No. 13-11502 (BLS)<br><br>Chapter 7 |
| In re:<br><br>RAFKO LOGISTICS INC.,<br><br>Debtor. | Case No 13-11504 (BLS)<br><br>Chapter 7 |
| In re:<br><br>RAFKO HOLDINGS INC.,<br><br>Debtor. | Case No. 13-11505 (BLS)<br><br>Chapter 7 |
| In re:<br><br>RAFKO ENTERPRISES INC.,<br><br>Debtor. | Case No. 13-11507 (BLS)<br><br>Chapter 7<br><br>**Bid Procedures Hearing Date: TBD**<br>**[Expedited Hearing Requested]**<br><br>**Bid Procedures Objection Deadline: TBD**<br>**[Requested to be at Bid Procedures Hearing]**<br><br>**Proposed Sale(s) Hearing Date: 9/9/2013**<br>**[Hearing Date Requested]**<br><br>**Proposed Sale(s) Objection Deadline: 9/4/2013**<br>**[Objection Date Requested]** |

**TRUSTEE'S MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE(S) OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS, (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER PROPOSED SALE(S) AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (C) AUTHORIZING TRUSTEE TO LIQUIDATE RESIDUAL ASSETS VIA AUCTION SALE(S); AND (II) AN ORDER (A) APPROVING THE SALE(S), AND (B) GRANTING CERTAIN RELATED RELIEF**

George L. Miller, as chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (the "Debtors"), moves for entry of an order, substantially in the form attached hereto as Exhibit A (the "Bidding Procedures Order"): (a) establishing bidding and auction procedures, (collectively, the "Bidding Procedures"), a copy of which is attached hereto as Exhibit B, in connection with the Trustee's sale(s) (the "Sale(s)") of substantially all of the assets of the Estates (the "Assets"), free and clear of all claims and any other interests, liens, mortgages, pledges, security interests, rights of first refusal, obligations, and encumbrances of any kind whatsoever (collectively, the "Interests"), (b) approving the form and manner of sale notices (the "Notice Procedures"); (c) scheduling an auction (the "Large Lot Auction") if, subject to the Bidding Procedures, the Trustee receives more than one Qualified Bid (as defined below) for Large Lots (as defined below), and setting a date and time for a hearing (the "Sale(s) Hearing") regarding the Sale(s) of the Assets in Large Lots; (d) authorizing the Trustee, in his discretion, to conduct the Residual Auction (as defined below) in order to liquidate any Residual Assets (as defined below) remaining after the Large Lot Auction; and (e) granting certain related relief.  The Trustee further requests that, subject to the results of the Large Lot Auction and the Bidding Procedures, the Court enter one or more orders, substantially in the form attached hereto as Exhibit C (such orders together, the "Sale(s) Order"): approving and authorizing the Sale(s) of the Assets in Large Lots free and clear of all Interests with liens attaching to proceeds.  In support, the Trustee states:

<strong><u>Jurisdiction, Core Nature, and Venue</u></strong>

1.     The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

<strong><u>Background</u></strong>

2.     On June 10, 2013 (the "<u>Petition Date</u>"), the Debtors commenced these cases (the "<u>Bankruptcy Cases</u>") by filing voluntary petitions for relief under chapter 7 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  On or around that same day, the Trustee was appointed.

3.     The Debtors were leading manufacturers, remanufacturers, and distributors of aftermarket automobile parts, including new and remanufactured steering components, brake calipers, master cylinders, hub assembly and bearings, and clutches and clutch hydraulics for virtually all passenger and truck vehicles.  The Debtors' businesses were concentrated in three main product lines: wheel hubs, brakes, and steering.  The Debtors had been planning to file petitions under chapter 11 of the Bankruptcy Code, but instead ceased operations and filed under chapter 7 when they were unable to obtain financing to fund chapter 11 cases.

**A.     <u>The Estates' Assets and the Sale Process</u>**

4.     The Trustee's primary goal in this case is to liquidate the Assets through a competitive sale process pursuant to 11 U.S.C. §363.  The Trustee has negotiated a carve-out with M&T Bank, the Debtors' alleged first priority secured creditor, so that a portion of the value from such a sale would flow to the Estates.

5.      The Assets include, without limitation, finished parts, inventory, machinery and equipment, accounts receivable (as deemed appropriate by the Trustee in consultation with M&T Bank) intellectual property, and a certain parcel of real property with buildings and improvements located in Lock Haven, Pennsylvania.  The Trustee intends to either sell all of the Assets together as a single package or, if appropriate, to break the Assets into separate Lots (each, a "Lot") for sale to multiple purchasers.

6.      With the assistance of his proposed sales agent Tiger Valuation Services LLC d/b/a Tiger Remarketing Services ("Tiger"),[1] the Trustee has been marketing the Assets for sale, and is engaged in discussions with several potential purchasers.  Although the Trustee has received a number of expressions of interest, to date no party has agreed to serve as a "stalking horse" bidder.

7.      The Trustee upon advice of Tiger has decided to conduct the sale process in two separate phases.  First, the Trustee proposes to conduct an open auction process at the Large Lot Auction for all of the Assets pursuant to the Large Lot Phase Procedures, as defined below (the "Large Lot Sale Phase").  During the Large Lot Sale Phase, the Trustee will attempt to sell all, or as many as possible, of the Assets either as one package or in relatively large separate Lots (the "Large Lots"), and then seek Court approval at the Sale Hearing.

8.      Although the Trustee's goal is to sell all of the Assets during the Large Lot Sale Phase, some individual assets may remain unsold following the conclusion of the Large Lot Sale Phase (any such unsold assets, the "Residual Assets").  The Residual Assets may consist of disparate collections of assets, including miscellaneous automobile parts, machinery, and

---

[1] The Trustee has filed an application for authority to retain Tiger as sales agent in these bankruptcy cases, which is pending at docket No. 22, and which is scheduled for hearing on August 22, 2013.

equipment, which would be difficult or less economically beneficial to sell as a package or in Large Lots. The Trustee, in his discretion, may wish to continue attempting to liquidate such Residual Assets. Accordingly, following the Large Lot Sale Phase, the Trustee may conduct a second phase (the "Residual Phase"), which would consist of Tiger, in consultation with the Trustee and M&T Bank, conducting a public auction (the "Residual Auction") at which Tiger, in consultation with the Trustee and M&T Bank, would attempt to sell as many of the Residual Assets as possible to the bidders submitting the highest bids at the Residual Auction, pursuant to the Residual Phase Procedures, as defined below. The Trustee in consultation with M&T Bank will make the determination of whether to conduct the Residual Phase following the conclusion of the Large Lot Phase, and will base his decision on factors including, but not necessarily limited to, the quantity and potential value of the Residual Assets.

9.      If held, the Residual Auction would likely result in a relatively large number of smaller sales, in comparison with the Large Lot Auction. Consequently, the Trustee proposes that the following procedure govern the Residual Phase. Following the Large Lot Sale Phase, if the Trustee elects to proceed with the Residual Phase, the Trustee will file with the Court, and serve upon the office of the United States Trustee (the "US Trustee") and counsel for M&T Bank, a listing of the Residual Assets to be sold at the Residual Auction (the "Residual Asset Notice"). If the US Trustee and/or M&T Bank do not object within three (3) business days of service, then the Trustee will be authorized to have Tiger conduct the Residual Auction and transfer the Residual Assets to the highest bidders at the Residual Auction without the need for further Court approval.

10.      Following the Large Lot Auction, and again following the Residual Auction, (if applicable) Tiger will file with the Court a Report of Sale(s), in which Tiger will list all of the

Assets sold, together with the sale prices for each item or Lot and the name(s) of the purchaser(s), pursuant to Federal Rule of Bankruptcy Procedure 6004(f).

11.    The Trustee believes that this dual phase process will enable the Estates to obtain maximum possible value for the Assets.  During the Large Lot Sale Phase, the Trustee will solicit bids for either all of the Assets, or Large Lots, in the manner described in the Large Lot Phase Procedures, and then present the Successful Bid(s) for Court approval.  Thereafter, in the Residual Phase, if applicable, the Trustee will be able to liquidate any remaining miscellaneous Assets in an efficient manner, in order to extract the greatest possible value.

## B.    **The Bidding Procedures**

12.    The Trustee in consultation with Tiger has devised the Bidding Procedures set forth in Exhibit B hereto to govern a competitive bidding process during the Large Lot Sale Phase and the Residual Phase.  The Bidding Procedures consist of the following provisions:

## I.    **GENERAL PROCEDURES FOR LARGE LOT PHASE AND RESIDUAL PHASE**

a.  **Potential Bidders**.  To participate in the bidding process, each interested person or entity must be deemed by the Trustee, in consultation with Tiger and M&T Bank, to be reasonably likely to be able to fund and complete the consummation of the proposed transaction on terms satisfactory to the Trustee (in the Trustee's discretion upon consultation with M&T Bank) and within the time frame acceptable to the Trustee if selected as the Successful Bidder (as defined below).  As promptly as reasonably possible, the Trustee will determine and notify the interested person or entity if such person or entity is acceptable and deem them a "Potential Bidder."  A Potential Bidder that makes a Qualified Bid as defined below is a "Qualified Bidder." M&T Bank is deemed a Qualified Bidder for both the Large Lot Phase and in the Residual Phase.  M&T Bank shall be entitled to credit bid their security interest upon the Collateral, provided it pays cash equal to the amount of Professional Carve-Out and Estate Carve-Out (as more fully described in the Sharing And Reimbursement Agreement Between Chapter 7 Trustee And M&T Bank As Secured Lender Providing For (I) Determination And Allowance Of The Lender's Pre-Petition Claims And Liens; (II) The Trustee's Sale Of The Debtor's Assets And Lender's Collateral; (III) The Specified Carve-Out Of The Lender's Liens; And (IV) Other Matters

Concerning The Trustee's Contemplated Sale(s) Of Collateral. M&T Bank reserves its right to credit bid for the Large Lot Phase and/or the Residual Phase.

b. **Due Diligence**. The Trustee may in his reasonable business judgment, and subject to competitive and other business concerns, afford each Potential Bidder with such due diligence access to the Assets and/or material concerning the Assets as the Trustee deems appropriate, after consultation with his counsel and with Tiger.

II. **LARGE LOT PHASE PROCEDURES.** The following procedures shall govern the Sale(s) of Assets in the Large Lot Phase (the "Large Lot Phase Procedures").

a. **Qualified Bids**. A proposal ("Bid") received during the Large Lot Phase from a Potential Bidder is a "Qualified Bid" if it:

    **i.** is accompanied by a completed and signed Bidder Qualification Form in substantially the form attached to the Bidding Procedures (the "Bid Form").

    ii. is received by the Bid Deadline (as defined below);

    iii. provides for the Potential Bidder's purchase, on an "as is, where is" basis, of some or all of the Assets;

    iv. specifies which of the Assets (if not all) the Potential Bidder proposes to purchase;

    v. includes a copy of a definitive purchase agreement, signed by an authorized representative of such Potential Bidder, in form and substance satisfactory to the Trustee in his reasonable discretion and in consultation with M&T Bank;

    vi. is not subject to any due diligence or financing conditions, or board or other approval;

    vii. is accompanied by a deposit of immediately available funds in an amount equal to the greater of $5,000 or 10% of the proposed purchase price (the "Deposit");

    viii. includes written evidence of an unconditional commitment for financing (by a credit-worthy bank or financial institution that shall provide such financing without alteration of conditions or delays) or other evidence of ability (including, but not limited to, financial wherewithal and financial capability) to consummate the transaction to pay a cash purchase price, as may be acceptable to the Trustee in his discretion after consultation with M&T Bank;

    ix. is reasonably likely (based on availability of financing, experience, and other considerations) to be consummated, if selected as a Successful Bid (as defined below), within a timeframe acceptable to the Trustee in his reasonable discretion and in consultation with M&T Bank;

    x.    is irrevocable until the earlier of: (a) forty-five (45) days after the Court authorizes and approves the Successful Bid(s), and (b) the closing date of the transaction(s) with the Successful Bidder(s) or Alternate Bidder(s) (as defined below); and

    xi.    Trustee acknowledges that M&T Bank qualifies automatically as a Qualified Bidder without having to fulfill any of the requirements of II.a.(i-x) above.

b.    **Large Lot Bid Deadline**.  A Potential Bidder that desires to make a Bid during the Large Lot Phase must deliver written copies of its Bid, via hand delivery or overnight mail, to Tiger Valuation Services LLC d/b/a Tiger Remarketing Services, 340 N. Westlake Blvd., Suite 260, Westlake Village, CA 91362, Attn. Jeff Tanenbaum, with a copy to the Trustee, George L. Miller, Miller Coffey Tate, LLP, 8 Penn Center, Suite 950, 1628 JFK Boulevard, Philadelphia, PA  19103, and Diane E. Vuocolo, Esquire, Greenberg Traurig, LLP, 2001 Market Street, 27th Floor, Philadelphia, PA 19103 as counsel to M&T Bank so that the Bid is ***actually received*** by the Trustee and Tiger by **12:00 p.m. (Noon) (ET) on August 29, 2013** (the "Bid Deadline"). The Trustee, in his discretion, may extend the Bid Deadline but is not obligated to do so.  If the Trustee extends the Bid Deadline, Tiger shall promptly notify all Potential Bidders of such extension.

c.    **No Qualified Bids**.  In the event that the Trustee does not receive any Qualified Bids during the Large Lot Phase, then the Trustee will not hold the Large Lot Auction.  In the Trustee's sole discretion after consultation with M&T Bank, the Trustee will either continue marketing some or all of the Assets, proceed to the Residual Phase, and/or cease pursuing (a) Sale(s) of some or all of the Assets at this time.

d.    **One Qualified Bid**.  In the event that the Trustee receives only one Qualified Bid, the Trustee will not hold the Large Lot Auction.  Instead, the Trustee shall either seek approval of the Sale(s) pursuant to such Qualified Bid or, in his discretion and in consultation with M&T Bank, shall reject such Qualified Bid and, in his discretion and in consultation with M&T Bank, either continue marketing some or all of the Assets, proceed to the Residual Phase, or cease pursuing (a) Sale(s) of some or all of the Assets at this time.

e.    **Multiple Qualified Bids, But None Competing**.  In the event that the Trustee receives multiple Qualified Bids during the Large Lot Phase and each Qualified Bid specifies (a) different Lot(s) and/or different Assets than the other Qualified Bids (i.e. no single Asset is subject to competing offers), then the Trustee, in his discretion and in consultation with M&T Bank, may or may not conduct the Large Lot Auction.  In the event that he does not conduct the Large Lot Auction under these circumstances, the Trustee, in his discretion and in consultation with M&T Bank, may either seek approval of the Sale(s) pursuant to the terms of one or more of the Qualified Bids, and/or may reject one or more of the Qualified Bids.  In the event that the Trustee elects to reject one or more of the Qualified Bids, then the Trustee, in his discretion, may either continue marketing some or all of the unsold Assets, proceed to the

Residual Phase, and/or cease pursuing (a) Sale(s) of some or all of such Assets at this time.

f.   <u>Tiger's Buyers' Premium</u>. Tiger shall charge a buyers' premium on all sales of Large Lots constituting machinery, equipment, and intellectual property at a rate of fifteen percent (15%) and Large Lots constituting real estate at a rate of ten percent (10%). Tiger's buyers' premium will be added to each Large Lot Successful Bidder's invoice.

g.   **Large Lot Auction Procedure**.

i.   If more than one Qualified Bid is received during the Large Lot Phase for the same Lot(s) and/or Assets, the Trustee shall conduct the Large Lot Auction on **August 30, 2013, beginning at 11:00 a.m. (ET)**, or such other time as the Trustee shall notify all Qualified Bidders.  The Large Lot Auction will take place via telephonic conference call.  The Large Lot Auction proceeding shall be transcribed by certified court reporter.  Detailed instructions for dialing in to the conference call, and participating in the Large Lot Auction, will be provided to Qualified Bidders prior to the Large Lot Auction.  Only Qualified Bidders who have timely submitted Qualified Bids shall be eligible to participate in the Large Lot Auction.  No Bids shall be considered by the Trustee unless the bidding party has submitted a Qualified Bid and participates in the Large Lot Auction (if a Large Lot Auction is held).

ii.   **Starting Large Lot Auction Bid**.  Prior to the start of the Large Lot Auction, the Trustee shall evaluate all Qualified Bids and shall determine, in consultation with Tiger and M&T Bank, what constitutes the highest and best offer for the Assets (the "<u>Starting Large Lot Auction Bid</u>").  The Trustee shall announce the Starting Large Lot Auction Bid at the commencement of the Large Lot Auction.  If Qualified Bids relating to different Lots or Assets are received, the Trustee may, in his discretion and in consultation with Tiger and M&T Bank, determine and announce separate Starting Large Lot Auction Bids relating to separate Lots or Assets.

iii.   **Minimum Overbids**.  At the Large Lot Auction, the Trustee, in his discretion and in consultation with Tiger and M&T Bank, may determine and set a minimum overbid amount.  The Trustee shall announce the minimum overbid amount, if any, at the beginning of the Large Lot Auction.  If Qualified Bids relating to different Lots or Assets are received, the Trustee, in his discretion and in consultation with Tiger and M&T Bank, may determine and set separate minimum overbid amounts for separate Lots or Assets.  The Trustee, in his discretion and in consultation with Tiger and M&T Bank, may alter the minimum overbid amount(s) during the course of the Large Lot Auction.

iv.   **Additional Rules**.  The Trustee, after consultation with Tiger and M&T Bank and in his sole discretion, may employ and announce at the Large Lot Auction additional procedural rules that are reasonable under the circumstances for

conducting the Large Lot Auction (e.g., the amount of time allotted to make subsequent Bids), provided that such rules: (i) are not inconsistent with the Bankruptcy Code or any order of the Court; and (ii) are announced to the Qualified Bidders at the Large Lot Auction.

v. **Bidding**. As the Large Lot Auction progresses, the Trustee, in his discretion and in consultation with Tiger and M&T Bank, may solicit overbids for all of the Assets as one package, for multiple Lots separately, and/or for individual Assets separately.

vi. **Successful Bidder(s)**. At the conclusion of the Large Lot Auction, the Trustee, in consultation with Tiger and M&T Bank, shall: (i) review each Qualified Bid (as may have been increased during the Large Lot Auction) on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummation of the Qualified Bid; and (ii) in his discretion identify the highest and best Qualified Bid (the "Successful Bid") and the bidder making such Bid (the "Successful Bidder"). If Qualified Bids relating to different Lots or Assets are received, the Trustee may, in his discretion and in consultation with Tiger and M&T Bank, identify separate Successful Bidders for separate Lots or Assets. The Trustee shall promptly seek confirmation that such Qualified Bidder(s) is/are the Successful Bidder(s) and that such proposals is/are the Successful Bid(s) at the Sale(s) Hearing.

vii. **Alternate Bidder(s)**. If the Trustee has received multiple Qualified Bids for the same Lots or Assets, the Trustee, in his discretion and in consultation with Tiger and M&T Bank, may identify the second best Qualified Bid (the "Alternate Bid" and, such bidder, the "Alternate Bidder") for such Lots or Assets, based on the same factors relevant to his determination of the Successful Bid. If applicable, the Trustee, in his discretion and in consultation with Tiger and M&T Bank, may identify separate Alternate Bidders for separate Lots or Assets.

h. **Sale(s) Hearing**. The Trustee is requesting that the Court schedule the Sale(s) Hearing on **September 9, 2013**, at which the Trustee shall seek entry of an order or orders, among other things, authorizing and approving the proposed transaction(s) with the Successful Bidder(s) pursuant to the terms and conditions set forth in the Successful Bid(s). If applicable, at the Sale(s) Hearing, the Trustee shall also seek approval of the Alternate Bid(s). The Trustee's presentation to the Court of the Successful Bid(s) and, if applicable, the Alternate Bid(s) will not constitute the Trustee's acceptance of such Bids, until such Bids are approved by the Court at the Sale(s) Hearing.

i. **Return of Deposits**. All Deposits, but excluding the Deposits of the Successful Bidder(s) and Alternate Bidder(s) (which, in the case of the Deposit(s) of the Alternate Bidder(s), shall be returned within three (3) business days of the closing of the Sale(s) to the Successful Bidder(s)), shall be returned to Qualified Bidders within five (5) business days after the date of the conclusion of the Large Lot Auction.

**III. RESIDUAL PHASE PROCEDURES.**  The following procedures shall govern the Sale(s) of Assets in the Residual Phase (the "Residual Phase Procedures").

a. **Trustee's Implementation of Residual Phase**.  If the Trustee, in his discretion and in consultation with Tiger and M&T Bank, determines to implement the Residual Phase, he will file with the Court a Residual Asset Notice and serve a copy of such Notice on the US Trustee and M&T Bank.  If the US Trustee and M&T Bank do not serve a written objection upon the Trustee within three (3) business days following such service, the Trustee may, in his discretion, implement the Residual Phase.

b. **Scheduling and Notice of Residual Auction**.  The Trustee, in his discretion and in consultation with Tiger and M&T Bank, shall determine a date and time for the Residual Auction.  Tiger shall advertise the Residual Assets and the time and place of the Auction via various means determined by Tiger in consultation with the Trustee to be appropriate such as targeted electronic mails, print advertisements, direct mailings, advertisements on its website, and any additional means that Tiger and the Trustee determine may be effective.

c. **Qualified Bids**.  A Bid received during the Residual Phase from a Potential Bidder is a "Qualified Bid" if it:

    i.    is submitted by a bidder that has completed Tiger's auction registration form;

    ii.    is made prior to the conclusion of the Residual Auction for the particular Residual Asset(s) subject to the Bid;

    iii.    provides for the Potential Bidder's purchase, on an "as is, where is" basis, of the particular Residual Asset(s) subject to the Bid;

    iv.    specifies which of the Residual Assets the Potential Bidder proposes to purchase;

    v.    is not subject to any conditions including, but not limited to, due diligence and/or financing conditions;

    vi.    is submitted by a registered bidder who has made an initial deposit of, at a minimum, $500 cash deposit for onsite auctions or $500 credit card authorization for online auctions (the "Initial Residual Deposit");

    vii.    is accompanied and secured by a deposit of either a cashier's check, a wire transfer, a business check accompanied by a bank letter of guaranty, or other certified funds acceptable to the Trustee, in an amount at least equal to twenty-five percent (25%) of the total of all of that Potential Bidder's previous Residual Asset Successful Bids (as defined below) (the "Continuing Residual Deposit"; collectively, with the Initial Residual Deposit the "Residual Deposit");

    viii.    is irrevocable; and

ix.    Trustee acknowledges that M&T Bank qualifies automatically as a Qualified Bidder for Residual Phase without having to fulfill any of the requirements of III.c.(i-vii) above.

d.    **Residual Auction Procedure**.

i.    The Residual Auction shall be a public auction, and shall be conducted as either an "internet-only" auction, or as an "in-person" auction with internet bidding also permitted.  The Residual Auction shall be transcribed by a certified court reporter if conducted as an in person auction.

ii.    In consultation with the Trustee, Tiger may group certain of the Residual Assets into Lots for sale.  Tiger, in consultation with the Trustee and M&T Bank, will determine opening bids and bidding increments for each Lot and for the Residual Assets to be sold at the Residual Auction.

iii.    **Bidding**.  Only Qualified Bidders may participate in the Residual Auction.  Following the conclusion of bidding on each Lot or Residual Asset, Tiger shall declare the highest and best bid submitted to be the successful bid for that particular Lot or Residual Asset unless the Trustee in consultation with M&T Bank elects to reject such bid (the "Residual Asset Successful Bid"), and the bidder who submitted such bid to be the successful bidder (the "Residual Asset Successful Bidder").  Once a Residual Asset Successful Bid has been declared with respect to a particular Lot or Residual Asset, the Residual Auction will be concluded with respect to that particular Lot or Residual Asset except as otherwise provided in these Residual Phase Procedures.

iv.    **Tiger's Buyers' Premium**.  Tiger shall charge a buyers' premium on all sales of Residual Assets constituting machinery, equipment, and intellectual property at a rate of fifteen percent (15%).  Tiger's buyers' premium will be added to each Residual Asset Successful Bidder's invoice, and the Residual Asset Successful Bidder shall pay such sum directly to Tiger.

v.    **Trustee's Exercise of Discretion**.  The Trustee will consult with Tiger throughout the Residual Auction, and the Trustee may, in his discretion and in consultation with M&T Bank, reject any Qualified Bid at the Residual Auction prior to such Qualified Bid's being declared a Residual Asset Successful Bid, and may, in his discretion and in consultation with M&T Bank, declare that a given Qualified Bid with respect to an individual Lot or Residual Asset is the Residual Asset Successful Bid for the Lot or Residual Asset(s) specified in such Bid at any time prior before the conclusion of the entire Residual Auction.  Prior to, or at any point during, the Residual Auction, the Trustee, after consultation with Tiger and in his sole discretion, may employ and announce at the Residual Auction revised and/or additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent Bids), provided that such rules: (i) are not inconsistent with the Bankruptcy Code or any order of the Court; and (ii) are announced to the Qualified Bidders at the Residual Auction.

vi.   **Maintenance of Deposit at Twenty-Five Percent (25%) Level**.  During the Residual Auction, each Qualified Bidder must maintain its Residual Deposit in an amount at least equal to the greater of either $500 or twenty-five percent (25%) of the aggregate total of all Residual Asset Successful Bids submitted by the particular Qualified Bidder.  Qualified Bidders must increase their Residual Deposits promptly when such increase becomes necessary to maintain the twenty-five percent (25%) level, pursuant to payment instructions to be provided by Tiger. If, following its becoming a Residual Asset Successful Bidder for a particular Lot or Residual Asset, a bidder fails to promptly increase its Residual Deposit as may be necessary to maintain the required twenty-five percent (25%) level, Tiger, in consultation with the Trustee, may nullify the designation of that particular bidder as the Residual Asset Successful Bidder for that Lot or Residual Asset, and may place that particular Lot or Residual Asset back into the Residual Auction.

vii.   **Full Payment and Removal of Residual Assets**.Within twenty-four hours after the conclusion of the Residual Auction, each Residual Asset Successful Bidder must pay Tiger the amount of their Residual Asset Successful Bid(s) minus the amount of their Residual Deposits held by Tiger.  Following such full payment, the Trustee (or Tiger, at the Trustee's direction) shall provide the Residual Asset Successful Bidder with a bill of sale or equivalent documentation, and the Residual Asset Successful Bidder must remove its purchased Residual Assets from the Auction premises within seven (7) days of the conclusion of the Residual Auction, or, upon such other time frame as agreed to in writing by the Trustee and Tiger.  If a particular Residual Asset Successful Bidder fails to remove its purchased Residual Assets from the Auction premises within such allotted time, then the Trustee may, in his discretion, retain the particular Residual Asset Successful Bidder's Deposit as liquidated damages, and/or re-sell the Residual Assets in question, without further notice to the Residual Asset Successful Bidder.

viii.   **No Further Approval Needed**.No further notice or Court approval is needed for the Trustee to transfer title to the Residual Assets to the applicable Residual Asset Successful Bidders.

ix.   **Closing of Residual Auction**.  The Residual Auction shall close when either all Residual Assets have been sold or when the Trustee, after consultation with M&T Bank,  in his discretion, determines that the Residual Auction should close based on factors including, but not necessarily limited to, a lack of interest in any remaining Residual Assets.

13.   Based on the foregoing, approval of the Bidding Procedures would result in the establishment of the following timeline:

(i)   August 29, 2013 at 12:00 p.m. (ET) – Deadline to Submit Qualified Bids.

(ii)   August 30, 2013 at 11:00 a.m. (ET) – Large Lot Auction.

(iii)     September 9, 2013 at __:_0 _.m. (ET) – Sale(s) Hearing.

(iv)     To be determined – Residual Auction.

## C.    **The Notice Procedures**

14.     The Trustee proposes the following Notice Procedures in connection with the

Sale(s):

a.   **Notice**.  The Trustee will serve notice (the "Notice of Auction and Sale(s) Hearing") within two (2) business days after the entry of the Bidding Procedures Order of the Bidding Procedures, the time and place of the Large Lot Auction, the time and place of the Sale(s) Hearing, and the objection deadline for the Sale(s) Hearing by sending a notice, substantially in the form attached hereto as Exhibit D, to (i) the Office of the United States Trustee; (ii) the Debtors; (iii) M&T Bank; (iv) Motorcar Parts of America, Inc.; (v) Wanxiang America Corporation; (vi) the Debtors' top thirty (30) largest unsecured creditors as appearing in the draft Consolidated List of Creditors Holding 30 Largest Unsecured Claims prepared by the Debtors (vii) the Internal Revenue Service, (viii) the United States Department of Justice; (ix) the Pennsylvania and California attorneys general; (x) the Pennsylvania Department of Environmental Protection; (xi) the California Environmental Protection Agency; (xii) the United States Environmental Protection Agency; (xiii) Environment Canada; (xiv) the Department of Justice of Canada; (xv) the Attorney General of Ontario; (xvi) the Alberta Justice and Solicitor General; (xvii) the Ontario Ministry of the Environment; (xviii) Alberta Environment and Sustainable Resource Development; (xix) all parties that have requested notice pursuant to Bankruptcy Rule 2002 in the Bankruptcy Cases; and (xx) all other entities known to have expressed an interest in acquiring the Assets (collectively, the "Notice Parties").

b.   **Objections**.  The Notice of Auction and Sale(s) Hearing will specify that objections (if any) to the relief requested by this Motion shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position, and shall be filed and served upon the following parties by the date that is five (5) days prior to the Sale(s) Hearing (the "Objection Deadline"): (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John. T. Carroll, III Esquire; (ii) M&T Bank, care of its counsel, Greenberg Traurig, 2700 Two Commerce Square, 2001 Market Street, Philadelphia, PA 19103, Attn: Diane E. Vuocolo; and (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081 (together, the "Service Parties").  The Trustee requests that the Court order that the failure to file and serve objections by the Objection Deadline and in accordance with the foregoing procedure shall be deemed a waiver of such objections and the objecting party shall be forever barred from asserting such objections with respect to the consummation and closing of the Sale(s).  The Notice of Auction and Sale(s) Hearing will further

state that any objections filed and served in accordance with the foregoing procedure will be heard by the Court at the Sale(s) Hearing.

15.     All objections to the relief sought at the Sale(s) Hearing must: (i) be in writing; (ii) state with specificity the nature of such objection (with appropriate documentation in support thereof); (iii) comply with the Federal Rules of Bankruptcy Procedure and this Court's Local Rules of Bankruptcy Practice and Procedure; and (iv) be filed with this Court and served upon (so as to be received by) the Service Parties on or before the Objection Deadline.

## Summary of Relief Requested

16.     The Trustee seeks expedited entry of the Bidding Procedures Order: (a) approving the Bidding Procedures; (b) scheduling the Large Lot Auction and the Sale(s) Hearing, and approving the Notice Procedures; (c) authorizing the Trustee to conduct the Residual Auction; and (d) granting certain related relief.

17.     Contemporaneously with this Motion, the Trustee is filing a separate motion seeking entry of an order scheduling an expedited hearing on the relief requested in the Bidding Procedures Order.

18.     In addition, at the conclusion of the Sale(s) Hearing, the Trustee will seek entry of the Sale(s) Order: (i) authorizing the sale of all or a portion of the Assets in Large Lots to the Successful Bidder(s); and (ii) granting certain related relief.

## Basis for Relief Requested

**A.    The Bidding Procedures are fair and designed to maximize the value received for the Assets**

19.     The Bidding Procedures are designed to maximize the value received for the Assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids.

20.     The Bidding Procedures provide Potential Bidders with more than the twenty-one days' notice of the Sale(s) Hearing required by Federal Rule of Bankruptcy Procedure 2002, and provide Potential Bidders with sufficient opportunity to acquire the information necessary for submission of a timely and informed Bid.  Through Tiger, the Trustee is engaged in discussions with a number of interested parties, and he expects to receive Bids in the near future.

21.     Through Tiger, the Trustee has already begun marketing the Assets, and has largely familiarized himself with the universe of participants and parties who may have a realistic interest in bidding for the Assets.  The Trustee does not believe that additional marketing would uncover any further serious bidders, and does not believe that extensive due diligence will be required by any prospective bidder in order to submit an offer for all or certain of the Assets.  Thus, the Trustee believes that the proposed auction timeline is sufficient to allow him to maximize the value of the Assets.

**B.    The Sale(s) should be approved under 11 U.S.C. §363(b)**

22.     11 U.S.C. §363(b)(1) provides, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  A court should approve a trustee's sale or use of assets outside the ordinary course of business if the trustee demonstrates a sound business justification for the proposed transaction.  See, e.g., In re

Martin, 91 F.3d 389, 395 (3d Cir. 1996); In re Abbott's Dairies of Pa., Inc., 788 F.2d 143 (3d

Cir. 1986).  Once the trustee articulates a valid business justification, "[t]he business judgment

rule 'is a presumption that in making a business decision the directors of a corporation acted on

an informed basis, in good faith and in the honest belief that the action taken was in the best

interests of the company.'"  In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); In re

Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R.

612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a Debtor's

management decisions").

  23. The Trustee has sound business justifications for selling the Assets at this time.

The Debtors are not operating, and the Trustee has no use for any of the Assets.  At the same

time, the Assets are incurring storage costs, property taxes, and possibly other costs, and may be

depreciating in value.  Consequently, the Trustee's selling the Assets would both generate cash

for the Estates and, at the same time, stem the incurrence of such liabilities.  In addition to the

accrual of tax and other possible liability, the Trustee is concerned that the longer the Assets

remain unsold, the more difficult it may become to attract buyers.  Consequently, the Trustee

wishes to complete the sale process as expeditiously as possible.

  24. The Trustee proposes to implement a competitive bidding process, which will

enhance his ability to receive maximum value.  Consequently, the fairness and reasonableness of

the consideration to be received by the Trustee will ultimately be demonstrated by a "market

check" through the auction process, which is the best means for establishing whether the Trustee

is receiving a fair and reasonable price for the Assets.

  25. In addition, all parties in interest will receive adequate notice of the Bidding

Procedures and Sale(s) Hearing as set forth above.  Such notice is reasonably calculated to

provide timely and adequate notice to the Estates' major creditor constituencies, those parties most interested in this case, those parties potentially interested in bidding on the Assets, and others whose interests may be impacted by the proposed Sale(s).

26.    In light of these circumstances, the Trustee's proposed Sale(s) and related procedures are consistent with sound business judgment, and meet the applicable standard under section 363(b)(1).

## C.    The Sale(s) should be free and clear of Interests pursuant to 11 U.S.C. § 363(f)

27.    11 U.S.C. §363(f) permits a trustee to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

28.    Under section 363(f), a Trustee may sell all or any part of the debtor's property fee and clear of any and all liens, claims, or interests in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

29.    As section 363(f) is written in the disjunctive, a trustee need only meet one of the five conditions of section 363(f).  If any parties holding any alleged Interests in the Assets file objections, the Trustee will be able to demonstrate at the Sale(s) Hearing that he can satisfy one

or more of these conditions with respect to each such party.  At a minimum, the Trustee expects that he will satisfy the second and fifth of these requirements, if not others as well.

**D.      The Successful Bidder(s) should be entitled to the protections of 11 U.S.C. §363(m)**

30.      Pursuant to 11 U.S.C. §363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  See In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985); In re Congoleum Corp., No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

31.      To the best of the Trustee's knowledge, none of the parties who have expressed an interest in bidding on the Assets have any relationship with the Debtors, their Estates, or the Trustee.  In response to any potential objection, the Trustee will present facts at the Sale(s) Hearing demonstrating that any Successful Bidders for the Assets have negotiated at arm's length, and that all parties were represented by their own counsel.

32.      Accordingly, the proposed Sale(s) Order will include a provision that the Successful Bidder(s) for the Assets is/are (a) "good faith" purchaser(s) within the meaning of 11 U.S.C. §363(m).  The Trustee believes that providing any Successful Bidder(s) with such protection will ensure that the Estates will receive the maximum possible price for the Assets.

**E.      The Trustee should be authorized to conduct the Residual Auction**

33.      Following the Large Lot Sale Phase, sufficient Residual Assets may remain to justify the Trustee continuing his liquidation efforts.  In that event, the Trustee submits that he should be permitted to implement the Residual Phase, in an effort to extract as much value as possible for the benefit of the Estates.

34.    The Residual Phase shall consist of Tiger and the Trustee identifying the Residual
Assets and offering the Residual Assets for sale in accordance with the Residual Phase
Procedures at a public auction (i.e. the Residual Auction), at which members of the general
public would be permitted to bid, and the Trustee would be authorized to transfer the Residual
Assets without the need for additional Court order.

35.    The Trustee believes that this procedure would be appropriate in the event that he
is left with a significant quantity of Residual Assets following the Large Lot Sale Phase.  The
Residual Assets (if any) will likely be sundry items that are not amenable to being sold in bulk.
The Residual Auction would likely result in sales of single Assets or small packages of items.

36.    The Trustee submits that the Residual Phase Procedures, including the filing and
service of the Residual Asset Notice, are appropriate and sufficient under the circumstances.  If
the US Trustee believes that any of the Residual Assets should not be liquidated at the Residual
Auction, then it would have the opportunity to object.

37.    In addition, Tiger shall file a Report of Sale(s) with the Court following the
Residual Auction in accordance with Federal Rule of Bankruptcy Procedure 6004(f), which
would inform the Court and parties in interest of the particular Residual Assets sold, the prices
obtained, and the identities of the purchasers.

38.    In the event that the Trustee decides to proceed with the Residual Phase, the
Trustee believes that Tiger would be able to extract maximum possible value from the Residual
Assets.  As described in detail in the Trustee's retention application, Tiger is an experienced
auctioneer and remarketer, with particular experience in liquidating automotive parts as well as
working in the bankruptcy context.  Tiger would advertise the Residual Auction through various
means, including targeted electronic mail, print advertising, and advertising on its website, and

would conduct the Residual Auction in an expert manner.  As detailed in the retention application, Tiger's fees (both during the Large Lot and Residual Phases) are calculated as a percentage of the sale proceeds.  Consequently, Tiger is highly motivated to achieve the best possible sale prices.

39.     Accordingly, the Trustee respectfully submits that if, in his discretion, the Trustee decides to implement the Residual Phase and conduct the Residual Auction in accordance with the Residual Phase Procedures, the Trustee should be permitted to do so without further order of the Court, subject to his filing of the Residual Asset Notice without objection.

**F.     Relief from Federal Rule of Bankruptcy Procedure 6004(h) is warranted**

40.     Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Trustee requests that the Court waive this fourteen day stay, and that the Sale(s) Order be effective immediately.

41.     The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the fourteen day stay, the leading bankruptcy treatise suggests that the fourteen day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy 15th Ed. Rev., ¶6004.10 at 6004-18 (L. King, 15th rev. ed. 2008).  The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

42.     As described above, time is of the essence.  The Debtors have ceased all operations, and the Estates are continuing to accrue storage and other costs in connection with the Assets.  The Trustee wishes to move expeditiously in order to prevent a further deterioration in net value to the Estates.  Consequently, a waiver of the Rule 6004(h) stay is in the Estates' best interest.

## Notice

43.     Notice of this Motion will be given to the Notice Parties.  In light of the nature of the relief requested, the Trustee respectfully submits that no further notice is necessary.

WHEREFORE, the Trustee respectfully requests that the Court enter the Bidding Procedures Order substantially in the form attached hereto as Exhibit A: (i) approving the Bidding Procedures (including Large Lot Phase Procedures and Residual Phase Procedures); (ii) scheduling the Large Lot Auction and Sale(s) Hearing and approving the Notice Procedures; (iii) authorizing the Trustee to sell the Residual Assets at the Residual Auction without further order of the Court; and (iv) granting related relief; and after a Sale(s) Hearing, enter the Sale(s) Order substantially in the form attached hereto as Exhibit C: (i) approving the Sale(s) of the Assets to the Successful Bidder(s) at the Large Lot Auction; and (ii) granting certain related relief and such other relief as the Court may deem appropriate.

Dated:  August 15, 2013

COZEN O'CONNOR

*/s/ John T. Carroll*

By: _____
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE  19801
(302) 295-2028 Phone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

*Counsel to George L. Miller,*
*Chapter 7 Trustee*