IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INTROCAN, INC.,<br><br>        Debtor. | Case No. 13-11499 (BLS)<br>Chapter 7<br>Related Doc. No. 36, 43 |
| In re:<br><br>FENWICK AUTOMOTIVE PRODUCTS LIMITED,<br><br>        Debtor. | Case No. 13-11500 (BLS)<br>Chapter 7<br>Related Doc. No. 53, 61 |
| In re:<br><br>FLO-PRO INC.,<br><br>        Debtor. | Case No. 13-11501 (BLS)<br>Chapter 7<br>Related Doc. No. 35, 42 |
| In re:<br><br>LH DISTRIBUTION INC.,<br><br>        Debtor. | Case No. 13-11502 (BLS)<br>Chapter 7<br>Related Doc. No. 36, 43 |
| In re:<br><br>RAFKO LOGISTICS INC.,<br><br>        Debtor. | Case No. 13-11504 (BLS)<br>Chapter 7<br>Related Doc. No. 35, 42 |
| In re:<br><br>RAFKO HOLDINGS INC.,<br><br>        Debtor. | Case No. 13-11505 (BLS)<br>Chapter 7<br>Related Doc. No. 35, 42 |
| In re:<br><br>RAFKO ENTERPRISES INC.,<br><br>        Debtor. | Case No. 13-11507 (BLS)<br>Chapter 7<br>Related Doc. No. 35, 42 |

**ORDER GRANTING TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE SALE(S), AND (B) GRANTING CERTAIN RELATED RELIEF**

17147181\4 00601.0823.000/337792.000
09/09/2013

This matter is before the Court on the Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with Sale(s) of Substantially all of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale(s) and Approving the Form and Manner of Notice Thereof, and (C) Authorizing Trustee to Liquidate Residual Assets Via Auction Sales; and (II) an Order (A) Approving the Sale(s), and (B) Granting Certain Related Relief (the "Sale Motion"),[1] seeking, among other things: (a) approval of the Purchase Agreements of the Successful Bidders, as each filed on the docket in these Bankruptcy Cases as Exhibits to the Sales Agent's Report of Sale on Results of Trustee's Auctions Held on August 30, 2013 and September 6, 2013 at Docket Nos. 56, 74, 51, 52, 51, 51, 50 (the "Final Purchase Agreement(s)"); (b) authority to sell certain of the Estates' assets as set forth in the Final Purchase Agreements free and clear of liens, liabilities, claims, interests, and encumbrances, and (c) related relief; and this Court, in furtherance of the Sale Motion, having entered an order on August 22, 2013 (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures and the Notice Procedures; and the Trustee having determined, after a marketing process and after the Auction(s), that the Successful Bidders, as identified in the Final Purchase Agreements and on the Schedule of Successful Bidders attached to this Order (the "Purchasers"), have submitted the highest and best bids for the respective Assets being purchased by each Purchaser (collectively, as defined in the Final Purchase Agreements, the "Purchased Assets"); and adequate notice of the Bidding Procedures, the Final Purchase Agreements, and all transactions contemplated thereunder and in this Order having been given in the manner directed by the Court in the Bidding Procedures Order; and all interested parties having been afforded an

---

[1] Unless otherwise defined in this Order, all capitalized terms shall have the meanings provided in the Sale Motion.

opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered the Sale Motion and all relief related thereto, and having held a hearing regarding the Sale Motion on September 9, 2013 (the "Sale Hearing"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation; and good and sufficient cause appearing,

## THE COURT HEREBY FINDS AND DETERMINES THAT:[2]

### Jurisdiction, Final Order, and Statutory Predicates

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Sale Motion are sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), 6004, 9007, and 9014.

C.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), the Court expressly finds that there is no just reason for delay in the implementation of this Order.

---

[2] These findings and conclusions constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

17147181\4 00601.0823.000/337792.000
09/09/2013

### Notice of the Sales and Auction

D.     Actual written notice of the Sale Motion was provided to the Notice Parties.

E.     The Trustee's Notice of Auction and Sale(s) Hearing was reasonably calculated to provide all interested parties with timely and proper notice of the Sales, Sale Hearing, and Auction(s).

F.     As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction(s), Sale Hearing, Sales, and the transactions contemplated thereby, has been provided in accordance with the Bidding Procedures Order, sections 105(a) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9007. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, and Sales is or shall be required.

G.     The disclosures made by the Trustee concerning the Sale Motion, Auction(s), Final Purchase Agreements, and Sales were good, complete, and adequate.

H.     A reasonable opportunity to object and be heard with respect to the Sales and the Sale Motion and the relief requested therein has been afforded to all interested parties, including but not necessarily limited to the Notice Parties.

### Good Faith of Purchasers

I.     The Final Purchase Agreements were negotiated, proposed, and entered into by the Trustee and the Purchasers without collusion, in good faith, and from arm's-length bargaining positions.

17147181\4 00601.0823.000/337792.000
09/09/2013

J.      Neither the Trustee nor the Purchasers have engaged in any conduct that would cause or permit the Final Purchase Agreements to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchasers have not acted in a collusive manner with any person and the Purchase Prices (as defined in each Final Purchase Agreement) were not controlled by any agreement among the bidders.

K.      The Purchasers are purchasing their respective Purchased Assets in good faith, and are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code, and are therefore entitled to all of the protections afforded by that provision, and otherwise have proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Purchasers recognized that the Trustee was free to deal with any other parties interested in acquiring any of the Assets; (b) the Purchasers complied with the provisions in the Bidding Procedures Order; (c) the Purchasers agreed to subject their bids to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) the Purchasers in no way induced or caused the filing of the Bankruptcy Cases; and (e) all payments to be made by the Purchasers in connection with the Sales have been disclosed.

## **Highest and Best Offers**

L.      The Trustee conducted an auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Auction process was duly noticed and conducted in a noncollusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher and better offer for any of the Assets.

M.    The Final Purchase Agreements constitute the highest and best offers for the Purchased Assets. The Trustee's determination that the Final Purchase Agreements constitute the highest and best offers for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

## No Fraudulent Transfers

N.    The consideration provided by each Purchaser pursuant to its respective Final Purchase Agreement (i) is fair and reasonable, (ii) is the highest and/or best offer for the applicable Purchased Assets, and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession, or the District of Columbia. Approval of the Sale Motion and the Final Purchase Agreements and the consummation of the transactions contemplated thereby is in the best interests of the Estates.

O.    The Purchasers are not mere continuations of the Debtors or their Estates and no continuity of enterprise exists between the Purchasers and the Debtors or their Estates. The Purchasers are not holding themselves out to the public as a continuation of the Debtors or their Estates. The Purchasers are not successors to the Debtors or their Estates and the Sales do not amount to consolidations, mergers, or de facto mergers of the Purchasers and the Debtors or their Estates.

## Validity of Transfers

P.    The Final Purchase Agreements were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the

6

United States, any state, territory, or possession, or the District of Columbia. Neither the Trustee nor the Purchasers are entering into the transactions contemplated by the Final Purchase Agreements fraudulently for purposes of statutory and/or common law fraudulent conveyance and fraudulent transfer laws.

Q. Subject to section 363(f) of the Bankruptcy Code, the transfers of the Purchased Assets to the Purchasers will be, as of the closing date of each transfer, legal, valid, and effective transfers of the Purchased Assets, which transfers shall vest each Purchaser with all right, title, and interest of the Estates to the applicable Purchased Assets free and clear of: (a) all liens and encumbrances (collectively, "Liens") arising any time prior to the closing date of such transfer, and (b) all claims (as that term is defined in Section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these Bankruptcy Cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims and Liens (i) that purport to give to any party a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Estates' or Purchasers' interests in the Purchased Assets, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) (collectively, as defined in this clause (b), "Claims") arising any time prior to the closing date of such transfer.

### Section 363(f) is Satisfied

R. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full with respect to each Sale; therefore, the Trustee may sell the Purchased Assets to the Purchasers pursuant to the Final Purchase Agreements free and clear of any Lien or Claim upon such assets, and may sell the Residual Assets pursuant to the Residual Phase Procedures free and clear of any Lien or Claim upon such assets.

S. The Purchasers would not have entered into the Final Purchase Agreements, and would not consummate the transactions contemplated thereby, if the Sales of the Purchased Assets to the Purchasers were not free and clear of all Liens and Claims. The Purchasers shall not be responsible for any Liens or Claims.

T. The Trustee may sell the Purchased Assets and the Residual Assets free and clear of all Liens and Claims against the Estates and/or any of such assets because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Liens or Claims against the Estates or any of the Assets who did not object, or who withdrew their objections, to the sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens or Claims are adequately protected by having their Liens or Claims, if any, in each instance against the Estates or any of the Assets, attach to the net cash proceeds of the Sale(s) ultimately attributable to the particular Asset(s) in which such creditor alleges a Lien or Claim, in the same order of priority, with the same validity, force and effect that such Lien or Claim had prior to the Sale, subject to any claims and defenses that the Estates may possess with respect thereto.

### Compelling Circumstances for Immediate Sales

U. Good and sufficient reasons for approval of the Final Purchase Agreements and the Sales have been articulated. The relief requested in the Sale Motion is in the best interests of the Estates. The Trustee has demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Sales other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in that, among other things, the immediate consummation of the Sales to the Purchasers are necessary and appropriate to maximize the value of the Estates.

V. Given all of the circumstances of these cases and the adequacy and fair value of the Purchase Prices (as defined in each Final Purchase Agreement), the proposed Sales of the Purchased Assets to the Purchasers constitute reasonable and sound exercises of the Trustee's business judgment and should be approved.

W. The consummation of the Sales is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transactions.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1. The relief requested in the Sale Motion is granted and approved, and the Sales contemplated in the Sale Motion, and embodied in the Final Purchase Agreements, are approved.

17147181\4 00601.0823.000/337792.000
09/09/2013

2. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

### Approval of the Final Purchase Agreements

3. The Final Purchase Agreements and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

4. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to: (i) consummate the Sales of the Purchased Assets to the Purchasers pursuant to and in accordance with the terms and conditions of the Final Purchase Agreements; (ii) close the Sales as contemplated in the Final Purchase Agreements and this Order; and (iii) execute and deliver, perform under, consummate, implement, and close fully the Final Purchase Agreements, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final Purchase Agreements and the Sales. The Purchasers shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of their remedies under their respective Final Purchase Agreements or any other related documents. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

5. This Order shall be binding in all respects upon the Trustee, the Estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens or Claims in, against, or on all or any portion of the Assets (whether known or unknown), the Purchasers and

all successors and assigns of the Purchasers, and the Assets. This Order and the Final Purchase Agreements shall inure to the benefit of the Estates and their creditors, the Purchasers, and the respective successors and assigns of each of the foregoing.

### Transfer of the Assets

6. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets to the Purchasers on the closing date under each Final Purchase Agreement, and such transfers shall constitute legal, valid, binding, and effective transfers of such Purchased Assets and shall vest the Purchasers with title to the applicable Purchased Assets and, upon the Trustee's receipt of the full Purchase Price (as defined in each Final Purchase Agreement) from each Purchaser, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims, provided that all such Liens, Claims or other interests shall attach to the proceeds attributable to the property against or in which such Liens, Claims, or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, that such Liens, Claims, or interests now have against such property. Upon the closing of each Sale, the Purchasers shall take title to and possession of their respective Purchased Assets.

7. The Trustee's transfers of the Residual Assets pursuant to the Residual Phase Procedures shall vest the purchasers of such assets with title free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims, provided that all such Liens, Claims or other interests shall attach to the proceeds attributable to the property against or in which such Liens, Claims, or

interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, that such Liens, Claims, or interests now have against such property.

8. At the closing of each Sale pursuant to the Large Lot Phase Procedures, each Purchaser shall pay its respective Purchase Price (as defined in the applicable Final Purchase Agreement) to the Trustee in the manner described in the applicable Final Purchase Agreement. Upon the closing of each Sale, whether pursuant to the Large Lot Phase Procedures or the Residual Phase Procedures, the Trustee shall be authorized to pay to M&T Bank a portion of the proceeds of such Sale calculated in accordance with the Sharing and Reimbursement Agreement Between Chapter 7 Trustee and M&T Bank as Secured Lender Providing for (I) Determination and Allowance of the Lender's Pre-Petition Claims and Liens; (II) the Trustee's Sale of the Debtor's Assets and Lender's Collateral; (III) the Specified Carve-Out of the Lender's Liens; and (IV) Other Matters Concerning the Trustee's Contemplated Sale(s) of Collateral, as entered into between the Trustee and M&T Bank filed of record at Docket Nos. 57, 75, 52, 53, 52, 52, 51 (including any modifications or amendments, the "Sharing Agreement"). The Trustee shall be authorized to make such payment in accordance with the terms of the Sharing Agreement, and to take any other actions that may be necessary to carry out his obligations under the Sharing Agreement with respect to the proceeds of the Sales. The Trustee's payment of Sale proceeds to M&T Bank pursuant to this paragraph and the Sharing Agreement shall be in full and final satisfaction of any Liens, Claims, or other interests of any kind asserted by M&T Bank against the Assets subject to such Sale.

9. All persons or entities in possession of any of the Purchased Assets on the closing date of the Sale of such Purchased Assets are directed to surrender possession of such Purchased Assets to the applicable Purchaser or its assignee upon such closing date. On the closing date of

each Sale, each of the Estates' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims, or other interests in the Assets subject to such Sale, if any, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

10. On the closing date of each Sale, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Estates' interests in the applicable Purchased Assets to each Purchaser. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Final Purchase Agreements.

11. On the closing date applicable to each Sale, each creditor is authorized and directed to take all other actions as may be necessary to release Liens, Claims, and other interests in or on the Assets applicable to such Sale, if any, as provided for herein, as such Liens, Claims, or interests may have been recorded or may otherwise exist. If any person or entity that has filed statements or other documents or agreements evidencing Liens or Claims upon all or any of the Assets shall not have delivered to the Trustee prior to the closings of the Sales, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens or Claims that the person or entity has or may assert with respect to any of the Assets, the Trustee and/or the Purchaser of such Assets are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to such Assets.

12. This Order is and shall be effective as a determination that, on the closing date of each Sale, all Liens, Claims, or other interests of any kind or nature whatsoever existing as to the Assets applicable to such Sale prior to the closing date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sales pursuant to this Order.

13. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets to the Purchasers in accordance with the terms of the Final Purchase Agreements and this Order.

## Prohibition of Actions against the Purchasers

14. Except as otherwise provided in this Order or the Final Purchase Agreements, the Purchasers shall not have any liability or other obligation to the Estates related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise

14

provided herein or in any Final Purchase Agreement, the Purchasers shall not be liable for any Claims against the Estates, and the Purchasers shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity.

15. All persons and entities holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchasers, their successors or assigns, their property, or the Purchased Assets, such persons' or entities' Liens, Claims, or interests in and to the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against any Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any Purchaser, its successors, assets, or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against any Purchaser, its successors, assets, or properties; (iv) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (v) revoking, terminating or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

16. The Purchasers have given substantial consideration under the Final Purchase Agreements for the benefit of the Estates. The consideration given by the Purchasers shall

constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the applicable Purchasers by all holders of Liens against or interests in, or Claims against, the Estates or any of the Purchased Assets. The consideration provided by the Purchasers for the Purchased Assets under the Final Purchase Agreements is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

### **Alternate Bidder[s]**

17. Pursuant to the Bidding Procedures, the bid of BBB Industries in the amount of $11,000,000.00 is hereby designated as the Alternate Bid for Lots 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 23, 24, 25 and 27 (the "BBB Alternate Bid") and BBB Industries is hereby designated as the Alternate Bidder for such Assets ("BBB Alternate Bidder"). In the event that Cardone Industries Inc. as Purchaser of such Assets fails to consummate the Sale of such assets for any reason, the Trustee is hereby authorized, but not directed, to accept the BBB Alternate Bid and enter into a Purchase Agreement with the BBB Alternate Bidder, on terms and conditions substantially similar to the terms and conditions set out in the Purchase Agreement by and between Cardone Industries Inc. (the "BBB Alternate Final Purchase Agreement") and the Trustee without further order of the Court.

18. Pursuant to the Bidding Procedures, the bid of New Deal LLC in the amount of $39,500.00 is hereby designated as the Alternate Bid for Lot 22 (the "New Deal Alternate Bid") and New Deal LLC is hereby designated as the Alternate Bidder for such Assets ("New Deal Alternate Bidder") In the event that Triple Diamond Imports as Purchaser of such Assets fails to consummate the Sale of such assets for any reason, the Trustee is hereby authorized, but not directed, to accept the New Deal Alternate Bid and enter into a Purchase Agreement with the

New Deal Alternate Bidder, on terms and conditions substantially similar to the terms and conditions set out in the Purchase Agreement by and between Triple Diamond Imports (the "New Deal Alternate Final Purchase Agreement") and the Trustee without further order of the Court (collectively, BBB Alternate Bidder and New Deal Alternate Bidder are referred to herein as the "Alternate Bidder(s)").

19. In the event that the Trustee consummates Sale(s) to Alternate Bidders pursuant to the preceding paragraph and the Bidding Procedures, all references in this Order to the "Purchaser" shall be interpreted to refer to the Alternate Bidders, and all references in this Order to the "Final Purchase Agreement" as applied to such Assets shall be interpreted to refer respectively to the BBB Alternate Final Purchase Agreement and the New Deal Alternate Final Purchase Agreement.

## Other Provisions

20. The transactions contemplated by the Final Purchase Agreements are undertaken by the Purchasers without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sales shall not affect the validity of the Sales, unless such authorization and the Sales are duly stayed pending such appeal. The Purchasers are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to the full protections of section 363(m) of the Bankruptcy Code.

21. Nothing in this Order or any of the Final Purchase Agreements releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or any Final Purchase Agreement

17147181\4 00601.0823.000/337792.000
09/09/2013

authorizes the transfer or assignment to any Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without the Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

22. Pursuant to Federal Rules of Bankruptcy Procedure 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the Trustee and the Purchasers are authorized to close the Sales immediately upon entry of this Order.

23. Nothing in this Order or any Final Purchase Agreement shall transfer, release, impede or otherwise impair any causes of action of the Estates (or any defenses thereto), including but not limited to any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Estates.

24. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sales.

25. The failure specifically to reference any particular provision any Final Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Final Purchase Agreements are authorized and approved in their entirety; provided, however, that this Order shall govern if any inconsistency exists between any Final Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order.

26. The Final Purchase Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in

18

accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Estates.

27. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Final Purchase Agreements, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is party or which has been assigned by the Trustee to the Purchasers, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sales, including, but not limited to, retaining jurisdiction to: (a) compel delivery of any of the Purchased Assets to the Purchasers; (b) interpret, implement, and enforce the provisions of this Order; and (c) protect any of the Purchasers against any alleged Liens, Claims, or other interests in or against the Purchased Assets of any kind or nature whatsoever.

28. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion, the terms of this Order shall govern.

30. The warehouse liens of G.O.S.S. Industries International ("GOSS") arising under the Canadian Repair and Storage Act shall attach to the proceeds of the sale of the Debtors' inventory stored in the GOSS warehouse located in Mississauga, Canada and the Trustee shall pay GOSS the sum equivalent to $71,314.71 (Canadian) from the sale proceeds upon the Trustee's receipt of such proceeds, plus any additional fees or costs incurred by GOSS for picking and/or palletizing the Debtor's inventory for shipment in connection with the sale by the Trustee, which payment shall be in full and final satisfaction of any and all liens and claims of GOSS.

17147181\4 00601.0823.000/337792.000
09/09/2013

31. No accounts receivable of the above captioned Debtors are being sold by the Trustee to the Purchasers pursuant to this Order and accounts receivable will not be sold by the Trustee under the Residual Phase Procedures.

32. The phrase "Including Lots 24 – 29" appearing at the end of the Lot 31 accounts receivable description in the Lot Catalog attached to the Final Purchase Agreement of Cardone Industries, Inc. shall be deemed stricken and have no force or effect with respect to Sales of the Purchased Assets included under the Cardone Industries, Inc. Final Purchase Agreement

BY THE COURT:

Dated: Sept 9, 2013

The Honorable Brendan L. Shannon
United States Bankruptcy Judge